# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| EYDIE CARLSON,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　　Defendant. | NO. C10-1762 MJP-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Eydie Carlson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded.

## I.　FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a 38 year-old woman with a high school degree and two years of college education. Administrative Record ("AR") at 47-48. Her past work experience includes employment as a bookkeeper. AR at 13. Plaintiff was

REPORT AND RECOMMENDATION - 1

last gainfully employed in February 1, 2006, her alleged onset date. She has worked for the same employer since 2003, but significantly decreased her work to around 8 hours per week. Accordingly, her work after her claimed onset date does not amount to substantial gainful activity. *Id.*

On March 2, 2006, plaintiff filed a claim for SSI and DIB payments. AR at 11. Plaintiff asserts that she is disabled due to fibromyalgia, idiopathic proctocolitis, chronic ulcerative colitis, an affective disorder, ankylosing spondylitis, lower back impairments and sleep apnea.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 11. Plaintiff requested a hearing which took place on October 9, 2008. AR at 24-71. On November 4, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform her past relevant work. AR at 11-23. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 4.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

IV. EVALUATING DISABILITY

As the claimant, Ms. Carlson bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

REPORT AND RECOMMENDATION - 3

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On November 4, 2008, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since February 1, 2006, the alleged onset date.

3. The claimant has the following severe impairments: fibromyalgia, idiopathic protocolitis, chronic ulcerative colitis, and an affective disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 5

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb, balance, crawl and never climb ladders. She could do some pushing and pulling and would need to avoid concentrated exposure to extreme cold, heat or hazardous machinery. She could work only in a low stress work environment with minimal changes in her work setting and no more than occasional contact with the general public.

6. The claimant is capable of performing past relevant work as a bookkeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2006 through the date of this decision.

AR at 13-22.

## VI. ISSUES ON APPEAL

Plaintiff raises multiple arguments on appeal that can be summarized as follows:

1. Did the ALJ err in her evaluation of the medical evidence?

2. Did the ALJ err in her determination of plaintiff's severe impairments?

3. Did the ALJ err in her adverse credibility determination?

4. Did the ALJ err in her RFC determination?

5. Did the ALJ err in finding plaintiff could do her past relevant work?

Dkt. 15.

## VII. DISCUSSION

A. <u>The ALJ Erred in her Evaluation of the Medical Evidence</u>

Plaintiff has an extensive medical history. She argues that the ALJ failed to give appropriate weight to the opinions of her treating physicians.

REPORT AND RECOMMENDATION - 6

### *1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

        *2.     Stephen Markus, M.D.*

Dr. Markus has been treating plaintiff since 1997. As Dr. Markus noted, during this time, plaintiff had sinus surgery, and at the age of 32, had a complete hysterectomy. AR at 26. In 2002, plaintiff was diagnosed with Crohn's disease, which in 2002 became debilitating to plaintiff, resulting in her leaving a full-time job, complications with endometriosis and ovarian cysts and evidence of auto-immune disorders. Dr. Markus also noted plaintiff suffers from bi-polar disorder, which complicates her physical ailments because the stress of being chronically ill leads to bouts of depression. He also noted she had inflammatory bowel disease and inflammation in her joints, fibromyalgia and chronic fatigue syndrome. AR at 261-62.

The ALJ failed to indicate how much weight she attributed to Dr. Markus' opinions, but it appears that she implicitly rejected them. Implicit rejections are not favored. This makes the reviewing process much more difficult. Assuming the ALJ intended to do this, she was required to provide specific and legitimate reasons for doing so. The ALJ did not. Even

though Dr. Markus has been plaintiff's treating physician for more than a decade, his views were apparently summarily disregarded with the following comments:

> Dr. Markus has stated that he believes the claimant is disabled. He is the claimant's treating physician and he sees her on a regular basis, but even his notes indicate that he suspects that prednisone only helps the claimant because it improves her mood. The claimant has been diagnosed with bipolar disorder and there is mention of prednisone bringing on manic type symptoms. Manic symptoms are supposed to be quite enjoyable, so it is understandable that the claimant would like to have these, but it is not reasonable that doctors continue to prescribe steroidal medications in the absence of documented inflammatory illness. It appears that Dr. Overman did not want to treat the claimant with steroids, so the claimant went to Dr. Neiman. The claimant is taking steroids, methadone and Narco, for pain that is apparently related solely to fibromyalgia, an impairment that is often treated with a mild antidepressant and light exercises.
>
> Treatment notes suggest that the claimant has reported that it takes her three hours to get moving in the morning. This does not necessarily eliminate work activity, but this limitation should simply impact when she plans to get things done in her day.

AR at 21.

The ALJ failed to comply with the *Orn* requirements regarding the analysis of the opinions of a treating physician. This requires remand. On remand, the ALJ should fully evaluate all of Dr. Markus' opinions, specify the weight to be given to these opinions, if any, and if the these opinions are to be discounted, provide the reasons for doing so consistent with the *Orn* hierarchy of medical evidence set forth above.

        *3.     Jon Berner, M.D., Ph.D. and Sang H. Suh, M.D.*

Dr. Berner is plaintiff's treating psychiatrist. On March 6, 2006, he noted:

> Chart review suggest progressive albeit relapsing and remitting course since intake at 1999. My impression is that both easy cognitive fatigue associated with the fibromyalgia complex and substantial mood instability associated with bipolar disorder preclude employment in the current national economy. My regrets about being unable [to provide] the examiners with greater detail in terms of their administrative requirements; the office sessions are not structure

REPORT AND RECOMMENDATION - 9

> to obtain information relevant to disability documentation. However, I note that the medical records suggest a planned diagnostic procedure, lumbar puncture. Typically this intervention with a low yield is discussed only in the context of disease that is so progressive that I fear death from suicide if appropriate medical intervention cannot be found. This context is provided for your reflection.

AR at 311. He also diagnosed plaintiff with marked restriction of her daily living activities as a result of her bipolar illness, moderate limitations in social functioning, and marked difficulties in maintaining concentration or persistence and her abilities to complete tasks. He viewed plaintiff's prognosis for a successful return to work as poor. AR at 442-43.

Plaintiff was also evaluated by psychiatrist Sang H. Suh, M.D., on May 30, 2006. AR at 319-322. Dr. Suh diagnosed her with bipolar disorder, currently in a mixed state without psychosis. He also noted:

> Ms. Carlson is a 35 y/o woman with a history of bipolar disorder clearly not yet entirely stabilized. Although she is not experiencing full manic mania, there is an underlying intensity, irritability, and moodiness that still makes it very difficult for her to function when one considers the rest of her symptoms including the depression, anxiety, her inability to concentrate, and the very little stamina. Until further stability, I believe that her ability to maintain gainful employment will be markedly limited.

AR at 321.

Again, the ALJ did not explicitly indicate how much weight she was giving to the treating and evaluating physicians, and indeed provided conflicting signals in her opinion.

> Dr. Berner is the claimant's reported treating psychiatrist, but in March of 2006, he indicated that the claimant had cognitive fatigue associated with fibromyalgia and substantial mood instability associated with bipolar, indicating that he was considering both the claimant's physical and mental impairment. There are also references in the treatment note to his making medication recommendations on the claimant's physical conditions, but it is not clear if this was his actual recommendation or the claimant's report. His treatment notes are not particularly helpful, but there is no discussion in his treatment records of the risks of chronic steroid medications or the possible impact of steroids on her mood that might impact his diagnosis. Dr. Suh also accepted the diagnosis of a

REPORT AND RECOMMENDATION - 10

> bipolar disorder. The claimant's medications are unusual for this impairment, but I defer to Dr. Berner and Dr. Suh in accepting the diagnosis. However, the claimant's functioning does not suggest that a mental impairment is impairing her ability to work as she is able to carry out the mental demands of her bookkeeping job. Her employer has not suggested that the quality of her work has suffered and he has continued to employ her for years despite her decreased attendance. This suggests that her mental functioning is not impacting her ability to get this work done.

AR at 21-22.

As was true with Dr. Markus, the ALJ failed to state what weight she gave to the reports of Dr. Berner and Dr. Suh, and she failed to provide specific and legitimate reasons for discounting the treating and evaluating physicians' reports, assuming this was her intent. If, in fact, it was her intent to discount the reports based on the fact that plaintiff could do her bookkeeping job for 8 hours per week, the ALJ must provide a basis for concluding that she could do so full-time. The ALJ's extrapolation cannot serve as a substitute for the requirement for substantial evidence. On remand, the ALJ is directed to reevaluate the opinions of Drs. Berner and Suh, specify the weight to be given to each, and if they are to be discounted, provide the reasons for doing so, consistent with the *Orn* hierarchy of medical evidence set forth above.

      B.      <u>The ALJ Erred in Part in Determining Plaintiff's Severe Impairments</u>

Plaintiff argues that the ALJ erred at step two of the disability evaluation process by failing to find severe impairments of ankylosing spondylitis, lower back impairment, and sleep apnea. Dkt. 15 at 5-8.

            *1.*      *Standards for Reviewing Step 2 Challenges*

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v.*

REPORT AND RECOMMENDATION - 11

*Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of her physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

### 2. *Ankylosing Spondylitis*

The ALJ noted that Dr. Markus suspected plaintiff might have ankylosing spondylitis because she felt better on prednisone. AR at 19. However, as the ALJ noted, there was not medically accepted diagnosis of ankylosing spondylitis. At the hearing, the Medical Expert also testified that her records did not support such a diagnosis. Because the record does not contain a diagnosis or appropriate symptoms, the ALJ did not err in concluding that plaintiff's severe impairments did not include ankylosing spondylitis.

### 3. *Lower Back Impairment*

When discussing whether plaintiff's condition met a Listing at Step 3 of the sequential evaluation process, the ALJ wrote: "The claimant has a long history of back pain."

Nevertheless, the ALJ failed to identify any lower back impairments as a severe impairment at Step 2. In light of the low threshold inquiry involved at Step 2 set forth above, this was error. The Commissioner argues that this was taken into account by the RFC determination at Step 4, but this is not self-evident from the opinion. On remand, the ALJ is directed to reevaluate the plaintiff's severe impairments.

### 4. *Sleep Apnea*

Plaintiff may suffer from sleep apnea. The ALJ did not identify this as a severe impairment. The Commissioner argues that there is no objective evidence indicating that her sleep apnea resulted in additional functional limitations. The Commissioner argues that the lack of treatment is an important indicator of the intensity and persistence of a claimant's symptoms, citing 20 C.F.R. §404.1529. The problem with the Commissioner's post hoc argument is that it runs contrary to the ALJ's dismissal of other medical issues:

> The claimant has been diagnosed with sleep apnea and this *may well be the root of many of her problems,* but she has not sought treatment for this or followed through with Dr. Markus' referral to a sleep specialist. Poor sleep could be a cause of both mood and pain symptoms….

AR at 19. The ALJ erred at Step 2 by failing to consider whether sleep apnea was a severe impairment, and certainly nothing in the RFC determination addresses this, if it is a severe impairment. This should be corrected on remand.

### C. The ALJ Erred in Entering an Adverse Credibility Determination

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR

96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found plaintiff less than credible, because (1) the plaintiff allegedly failed to follow recommended treatments and (2) she sought treatment and providers who agreed with her presumptions about her condition. AR at 21. Neither reason supports the adverse credibility finding.

The treatment allegedly not followed is not specifically identified. If this was a reference to plaintiff's use of prednisone, a prescribed substance, the ALJ should have said so

directly, and should also discuss the conflicting medical advice plaintiff received, and why following advice given by one doctor not recommended by another doctor makes her somehow less credible. The ALJ did not do so. If the treatment allegedly not followed was for sleep apnea, an allegedly non-severe impairment, the ALJ should have stated this, and then discussed why failing to follow treatment suggestions for a non-severe impairment would cast all of plaintiff's credibility into question. The same is true for her treatment providers. Plaintiff was told on many occasions, for example, that she had Crohn's disease. Yet, the ALJ found her not credible because she believed her doctors. "She clearly believes that she has an inflammatory disease and has sought treatment and changed physicians when their assessments did not match her presumtions about her condition." *Id*. The irony of this conclusion is that had she not followed the treatment advice of her physicians who diagnosed Crohn's disease, the ALJ might have found her non-credible for failing to follow treatment suggestions. Credibility evaluation should not be a Catch-22 process. On remand, the ALJ is directed to reevaluate plaintiff's credibility using the standards set forth above.

D. Remand Requires a Reevaluation of Plaintiff's RFC

Because the ALJ erred as set forth above, on remand the ALJ should reevaluate plaintiff's RFC after considering all the medical evidence relating to plaintiff's impairments.

E. The ALJ Erred in Determining Plaintiff Could Perform Her Past Relevant Work on the Present Record

The ALJ simply extrapolated from plaintiff's ability to work part-time as a bookkeeper that she could do so on a full-time basis. Plaintiff presently works 8 hours per week, notwithstanding the wish of her employer and the financial needs of her family, that she work more hours. In doing so, the ALJ neglected to deal with fatigue issues noted by many of her doctors as well as the other limitations identified. After reevaluating the medical evidence,

reevaluating plaintiff's credibility and reevaluating plaintiff's RFC, the ALJ is directed to reassess whether plaintiff can actually perform her current 8 hour per week job on a full time basis, and, if she concludes that plaintiff is able to do so, the ALJ should set forth her reasoning.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 8th day of September, 2011.

*/s/ James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge